Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2410
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*BigMouth, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BigMouth, Inc.<br>*Plaintiff*<br><br>v.<br><br>RUIPU USA, Inc. d/b/a Merry Xmas and Wei Zhang a/k/a Steven Wei<br>*Defendants* | **CIVIL ACTION No. 1:15-cv-5035**<br><br>**COMPLAINT**<br>**JURY TRIAL REQUESTED** |

Plaintiff, BigMouth, Inc. ("BigMouth" or "Plaintiff"), a corporation organized under the laws of the state of Connecticut, by and through its undersigned counsel, alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for: copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq.; for trademark infringement of a federally registered trademark in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; for counterfeiting of a federally registered trademark  in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); for false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); and for related state and common law claims.  Plaintiff seeks injunctive relief, an

accounting, compensatory damages and/or statutory damages, treble damages, attorney's fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.      This Court has Federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. and the Copyright Act, 17 U.S.C. §§ 101 et seq.; pursuant to 15 U.S.C. § 1121; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; as well as pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a).

3.      Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiff in this district.

4.      Personal jurisdiction exists over Defendants because, upon information and belief, Defendants conduct business in New York and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## THE PARTIES

5.      Plaintiff BigMouth is a corporation organized and existing under the laws of the

state of Connecticut, having its principal place of business at 655 Winding Brook Drive, Suite 205, Glastonbury, CT 06033.

6.      Upon information and belief, Defendant RUIPU USA, Inc. d/b/a Merry Xmas ("RUIPU") is a corporation, organized and existing under the laws of the state of California, having its principal place of business at either 43234 Business Park Drive, Suite 104, Temecula, CA 92590 or 38415 Innovation Court, Suite 1, Murrieta, CA 92563.

7.      Upon information and belief, Defendant Wei Zhang a/k/a Steven Wei ("Zhang"), is an individual whose true address is currently unknown.  Upon information and belief Zhang's last known business address is 38415 Innovation Court, Suite 1, Murrieta, CA 92563.

8.      Upon information and belief, and at all times relevant hereto, Zhang is an officer, director, principal, shareholder and/or owner of RUIPU and the unlawful acts of RUIPU, as alleged herein, were performed within the course and scope of such position.  RUIPU and Zhang (collectively, "Defendants") enriched themselves by fraudulent and illegal conduct as alleged herein, while Plaintiff suffered enormous financial injury.

9.      Upon information and belief, adherence to the fiction of the existence of Zhang as separate and distinct from RUIPU, would permit an abuse of corporate privilege and would permit an injustice in that Zhang would succeed in avoiding legally incurred liabilities while maintaining the benefits of the corporate status.

10.      Upon information and belief since the time of its creation, now, and all times relevant to this Complaint, such a unity of interest and ownership existed between Zhang and RUIPU such that separate personalities did not and do not, in reality, exist.

## GENERAL ALLEGATIONS

### Plaintiff BigMouth and its Well-Known Novelty Items

1.      BigMouth, founded in 2001 by Steve Wampold, is a company that designs manufactures, markets and distributes a variety of creative and humorous novelty items.  Since the introduction of its first branded product in 2004, The Get Off The Phone Excuse Machine, BigMouth has become an industry leader in the field of novelty and gag-gift items.

2.      To date, BigMouth has a portfolio of over five hundred (500) unique, high-quality products sold under the BIG MOUTH TOYS trademark/service mark ("Authentic Products") and sells to thousands of consumers around the globe.  BigMouth's Authentic Products are promoted and sold by BigMouth and its domestic and international distributors ("Authorized Distributors") through a variety of retail channels including, but not limited to: brick & mortar stores, catalogues and online storefronts such as Amazon.com, American Eagle, Bed Bath & Beyond, Five Below, Hallmark Stores, Harriet Carter Gifts & Calendar Club, Johnson Smith Company, Nordstrom, Spencer's, Target, Toys R Us, ThinkGeek, Urban Outfitters, Walmart, and many others.

3.      The internationally successful Authentic Products have been featured in television shows (including, but not limited to: the Today Show, The Tonight Show with Jay Leno and the Regis & Kelly show), movies, and magazines (including, but not limited to: People Magazine, Food Network Magazine, GQ, etc.).

4.      In addition, BigMouth owes a substantial amount of the success of its Authentic Products to its consumers which include numerous celebrities.  In fact, the Authentic Products have an expansive celebrity fan-base and have been featured in use by celebrities such as Taylor Swift, Justin Timberlake, Reese Witherspoon, Miley Cyrus, Justin Bieber, Metallica, Snoop Dogg and Khloe Kardashian, among others.

5.      BigMouth, its Authentic Products and its novelty franchise have also received widespread press and media coverage.  News stories, reports, reviews, features, press releases and

blog posts have appeared in worldwide print and online publications such as: CBS Sports, Huffington Post, Everyday With Rachael Ray, The Doctors TV, The Hartford Courant, The Hartford Business Journal, and Buzzfeed, among many others.

6.     BigMouth's success is also due to its use of the highest quality materials and processes in producing its Authentic Products.

7.     While BigMouth has gained significant common law trademark and other rights in its BIG MOUTH TOYS trademark/service mark through its extensive use, advertising and promotion of its Authentic Products, BigMouth has also protected its valuable rights by filing for and obtaining a federal trademark registration.  Accordingly, Big Mouth is the owner of U.S. Trademark Registration No. 4,236,210 for BIG MOUTH TOYS for a wide variety of goods in Classes 35, 40 and 42 (the common law rights and the federal registration for the BIG MOUTH TOYS trademark/service mark are collectively hereinafter referred to as the "Mark").  A true and correct copy of the registration for the Mark is attached hereto as **Exhibit A** and incorporated herein by reference.

8.      The Mark is currently in use in commerce for the Authentic Products, which include various novelty and gag-gift items such as mugs (the products at issue in this action), pool floats, drink coolers, shot glass sets, salt & pepper shakers, sound machines, toys, garden gnomes, clocks & timers, etc. and the date of first use in commerce and constructive date of first use based on BigMouth's federal trademark registration for its Mark is no later than November 1, 2004.

9.     BigMouth also owns both registered and unregistered copyrights in and related to the Authentic Products and packaging

10.     For example, Plaintiff owns the following relevant certificates of registration:

VA1895527, VA1895529 and VA1928371 as well as numerous common law copyrights (hereinafter collectively referred to as the "Copyright Works").  True and correct copies of the foregoing certificates of registration are collectively attached hereto as **Exhibit B** and incorporated herein by reference.

11.     As a result of BigMouth's efforts, the quality of its Authentic Products, its marketing and promotional efforts, extensive press and media coverage and word of mouth buzz, BigMouth's Mark, Copyright Works and Authentic Products have become prominently placed in the minds of the public.  Retailers, retail buyers, consumers, and the members of the public  have become familiar with BigMouth's Mark, Copyright Works and Authentic Products, and have come to associate them exclusively with BigMouth.  BigMouth has acquired a valuable reputation and goodwill among the public as a result of such association (i.e., acquired distinctiveness or secondary meaning).

12.     BigMouth has gone to great lengths to protect its interests in and to its Mark and Copyright Works.  No one other than BigMouth and its Authorized Distributors are  authorized to copy, manufacture, import, export, advertise, distribute, offer for sale, or sell any Authentic Products or  goods utilizing the Mark or Copyright Works, or any confusingly or substantially similar marks or artwork, without the express written permission of BigMouth.

**Defendants' Wrongful and Infringing Conduct**

13.     Particularly in light of the success of Plaintiff and its Authentic Products, Plaintiff and its Authentic Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill and reputation Plaintiff has amassed in its Mark, the works embodied in its Copyright Works and Authentic Products.

14.     Plaintiff investigates and enforces against such activity, and through such efforts,

learned of Defendants' actions, which vary, and include: copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling mugs in packaging bearing Plaintiff's Mark, and/or marks that are confusingly or substantially similar to and constitute an infringement of Plaintiff's Mark, and/or packaging that is identical or confusingly or substantially similar to and constitute an infringement of Plaintiff's Copyright Works, and/or mugs that are identical or confusingly or substantially similar to Plaintiff's Authentic Products (collectively hereinafter referred to as, "Infringing Products" or "Counterfeit Products") to U.S. consumers via its Amazon.com storefront, using the seller name 'Merry Xmas' ("Amazon Storefront") and its eBay storefront, using the seller name 'treasuresbyina' ("eBay storefront").  A printout from Defendants' Amazon Storefront from May 29, 2015 is attached hereto as **Exhibit C** and a printout from Defendants' eBay Storefront from June 26, 2015 is attached hereto as **Exhibit D**.

15.    On or about May 29, 2015, counsel for Plaintiff hired investigators from Intellectual Property Enforcement Company ("IPEC"), located in California, to further investigate Defendants' infringing activities.  Accordingly, on or about June 9, 2015, an investigator from IPEC visited Defendants' warehouse located at 38415 Innovation Court, Suite #1, Murrieta, CA 92563.  During the course of this visit, Defendant Zhang informed the IPEC investigator that he had ten thousand (10,000) Infringing Products in stock and was expecting another shipment of Infringing Products to come within the next two (2) weeks.  The IPEC investigator proceeded to purchase three (3) Infringing Products from Defendant Zhang. True and correct copies of photographs of the Infringing Products purchased by the IPEC investigator in comparison to true and correct copies of photographs of the Authentic Products are attached hereto as **Exhibit E** and incorporated herein by reference.

16.     The Infringing Products purchased by the IPEC investigator are counterfeit and infringe Plaintiff's Mark and Copyright Works.

17.     On or about June 25, 2015, counsel for Plaintiff purchased two (2) Infringing Products from Defendants' Amazon Storefront.  The Infringing Products purchased by counsel for Plaintiff's were delivered to its New York office on June 26, 2015.

18.     The Infringing Products purchased by counsel for Plaintiff are counterfeit and infringe Plaintiff's Mark and Copyright Works.

19.     Defendants are not, nor have they ever been, Authorized Distributors of the Authentic Products.  Neither Plaintiff nor any of Plaintiff's authorized agents have consented to Defendants' use of Plaintiff's Mark and/or Copyright Works, nor have they consented to Defendants' use of any identical or confusingly similar marks by Defendants.  Plaintiff has never authorized Defendants to copy, use, manufacture, import, export, advertise, market, promote, distribute, display, offer for sale or sell any of its Authentic Products or products bearing its Mark and/or Copyright Works.

20.     By the Defendants' dealings in Infringing Products (including, but not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products) as alleged herein, Defendants have violated Plaintiff's exclusive rights in and to its Mark and Copyright Works, and have used marks, images and/or designs that are confusingly and/or substantially similar to, identical to, and constitute counterfeiting and/or infringement of Plaintiff's Mark and Copyright Works, to confuse consumers and aid in the promotion and sales of their Infringing Products.  Defendants' conduct and use began long after Plaintiff's adoption and use of its Mark and Copyright Works.

21.     Prior to and contemporaneous with their unlawful actions alleged herein,

Defendants had knowledge of Plaintiff's ownership of its Mark and Copyright Works and of the extraordinary fame and strength of Plaintiff's Mark and Copyright Works and the incalculable goodwill associated therewith, and in bad faith adopted Plaintiff's Mark and Copyright Works.

22.     Defendants' illegal counterfeiting and infringing actions, alleged herein, will cause confusion, mistake and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products, and cause consumers to erroneously believe that such Infringing Products are licensed by, or otherwise associated with, Plaintiff, thereby irreparably damaging Plaintiff.

23.     In committing these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: infringed Plaintiff's Copyright Works; counterfeited Plaintiff's Mark and Authentic Products; infringed Plaintiff's Mark; committed unfair competition; and unfairly and unjustly profited from such activities at Plaintiff's expense.

24.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

25.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

26.     BigMouth is the exclusive owner of the Copyright Works.

27.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Copyright Works.

28.     Defendants did not attempt and failed to obtain Plaintiff's consent or

authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform, and/or market Plaintiff's Authentic Products and/or Copyright Works.

29.     Without permission, Defendants knowingly and intentionally reproduced, copied, and/or displayed Plaintiff's Copyright Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale or selling Infringing Products which bear such Copyright Works or, artwork that is, at a minimum, substantially similar to Plaintiff's Copyright Works.

30.     Defendants' unlawful and willful actions, as alleged herein, constitute infringement of Plaintiff's Copyright Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Copyright Works in violation of 17 U.S.C. § 501(a).

31.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff and, unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiff for which it has no adequate remedy at law.  Plaintiff is therefore entitled to injunctive relief, Plaintiff's actual damages, Defendants' profits in an amount to be proven at trial and enhanced discretionary damages or, in the alternative, statutory damages for willful copyright infringement of up to $150,000 per infringement, and reasonable attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act,**
**15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c))**

32.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

33.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Mark and with knowledge that their Counterfeit Products bear

counterfeit marks, which are intentional reproductions, copies, and/or colorable imitations of Plaintiff's Mark, or display spurious designations that are identical with, or substantially indistinguishable from Plaintiff's Mark, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce.

34.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of Plaintiff's Mark to packaging, point-of-purchase images and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

35.     Defendants' unauthorized use of Plaintiff's Mark on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its Authorized Distributors and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in Plaintiff's Mark.

36.     Defendants' actions constitute willful counterfeiting of Plaintiff's Mark in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

37.     As a direct and proximate result of Defendants' actions alleged herein, Defendants

have caused substantial and irreparable injury and damage to Plaintiff and its valuable Mark for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause damage to Plaintiff and its valuable Mark in an amount as yet unknown, but to be determined at trial.

38.    Based on the foregoing, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorney's fees and costs.

## THIRD CAUSE OF ACTION
### (Infringement of Registered Trademark)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

39.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

40.    Plaintiff has continuously used its Mark in interstate commerce since at least as early as 2004 [??].

41.    Plaintiff, as the owner of all right, title and interest in and to its Mark, has standing to maintain an action for trademark infringement under the Trademark Statute 15 U.S.C. § 1114.

42.    Defendants are now, and were at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the Mark.

43.    Defendants did not attempt and failed to obtain consent or authorization from

Plaintiff, as the registered trademark owner of the Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale, and/or sell Authentic Products and/or related products bearing Plaintiff's Mark into the stream of interstate commerce.

44.     Defendants knowingly and intentionally reproduced, copied, and colorably imitated Plaintiff's Mark and applied such reproductions, copies, or colorable imitations to websites, packaging, and/or advertisements used in commerce, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Defendants' Infringing Products.   Defendants manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold Infringing Products bearing, or in connection with, such websites packages, and/or advertisements.

45.     Defendants' egregious and intentional use of Plaintiff's Mark in commerce and Defendants' sale of items bearing Plaintiff's Mark or colorable imitations of Plaintiff's Mark has caused actual confusion, and is likely to continue to cause further confusion, to cause mistake, and to deceive the general purchasing public as to the origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are Plaintiff's Authentic Products, or are otherwise associated with, or authorized by Plaintiff.

46.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's exclusive rights and goodwill in the Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

47.     Defendants' continued, knowing and intentional use of Plaintiff's Mark without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally

registered Mark in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

48.     As a direct and proximate result of Defendants' unlawful and infringing actions as alleged herein, Plaintiff has suffered substantial and irreparable injury, loss and damage to its business and its rights in and to the Mark and the goodwill associated therewith, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause substantial and irreparable injury, loss and damage to Plaintiff and its rights in and to its Mark and the goodwill associated therewith.

49.     Based on such conduct, Plaintiff is entitled to injunctive relief, damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

50.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

51.     Plaintiff, as the owner of all common law right, title, and interest in and to the Mark, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

52.     Plaintiff's Mark is inherently distinctive and/or has acquired distinctiveness.

53.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to and constitute a reproduction of Plaintiff's Copyright Works and/or used marks that are identical or confusingly similar to and

constitute reproductions of Plaintiff's Mark, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are Authentic Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved endorsed or licensed by Plaintiff, and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, Plaintiff's Mark and brands, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

54.    By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Authentic Products using marks and artwork identical and/or confusingly or substantially similar to, or which constitute colorable imitations of Plaintiff's Mark and Copyright Works, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and intends and will continue to induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its

nationwide marketing, advertising, sales and consumer recognition.

55.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and/or artwork that are identical or confusingly or substantially similar to and constitute a reproduction of Plaintiff's Mark and Copyright Works would cause confusion, mistake, or deception among purchasers, users and the public.

56.     Upon information and belief, Defendants' aforementioned wrongful actions have been  knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Authentic Products and its Mark.

57.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Authentic Products and by depriving Plaintiff of the value of its Mark as  commercial assets, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Plaintiff's Mark in an amount as yet unknown, but to be determined at trial.

58.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Violation of Deceptive Acts and Practices Unlawful)**

**[N.Y. Gen. Bus. Law § 349]**

59.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60.     Through Defendants' unlawful, unauthorized, and unlicensed use of Plaintiff's Mark and Copyright Works on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling, and/or otherwise dealing in Infringing Products which are identical and/or confusingly similar to Plaintiff's Authentic Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

61.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.   Such conduct has deceived and materially misleads, or has a tendency to deceive and materially mislead the consuming public and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law §§ 349.

62.     As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

63.     Pursuant to N.Y. Gen. Bus. Law. § 349(h), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

**SIXTH CAUSE OF ACTION**
**(False Advertising Unlawful)**
**[N.Y. Gen. Bus. Law § 350]**

64.     Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs.

65.     Without the authorization of Plaintiff, Defendants have used Plaintiff's Mark and Copyright Works and/or marks, artwork and/or packaging designs that are identical and/or confusingly or substantially similar to Plaintiff's Mark and Copyright Works in connection with the advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, which are identical and/or confusingly similar to Plaintiff's Authentic Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

66.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured, and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen, Bus. Law § 350.

67.     As a result of Defendants' actions alleged herein, Plaintiff has suffered, and will continue to suffer irreparable harm for which it has no adequate remedy at law.

68.     Pursuant to N.Y. Gen. Bus. Law. § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorney's fees.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

69.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70.     By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by themselves advertising, marketing, promoting,

distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products, Defendants have traded off the extensive goodwill of Plaintiff and its Authentic Products to induce and did induce, and will continue to induce customers to purchase its Infringing Products, thereby directly competing with Plaintiff.  Such conduct has permitted, and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

71.     Defendants' advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion, cause mistake and to deceive consumers and the public as to the source, origin, sponsorship, or quality of Defendants' Infringing Products.

72.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products and their continuing advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products would cause confusion, cause mistake or deceive purchasers, users and the public.

73.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff and its competitive position while benefiting Defendant.

74.     As a direct and proximate result of Defendants' aforementioned wrongful actions,

Plaintiff has been, and will continue to be, deprived of substantial sales of its Authentic Products in an amount as yet unknown but to be determined at trial, and has been, and will continue to be deprived of the value of its Mark as commercial assets, in an amount as yet unknown but to be determined at trial.

75.     Plaintiff has no adequate remedy at law for Defendants' continuing violation Defendants' continuing violation of its rights set forth above.  Plaintiff seeks injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.  Plaintiff seeks exemplary or punitive damages for Defendants' intentional misconduct.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**[New York Common Law]**

76.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

77.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

78.     Defendants' retention of monies gained through its deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of

Plaintiff's Copyright Works under 17 U.S.C. § 501(a);

B.      In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of Plaintiff's Copyright Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

D.      In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just, which Plaintiff may elect prior to the rendering of final judgment;.

E.      For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of its federally registered Mark, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3);

F.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a)(3) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

H.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.  manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

    ii.  directly or indirectly infringing in any manner any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Mark or Copyright Works;

    iii.  using any reproduction, counterfeit, copy or colorable imitation of

Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Mark and Copyright Works to identify any goods or services not authorized by Plaintiff;

iv. using any of Plaintiff's copyrights, trademarks or other exclusive rights (whether now in existence or hereafter created) including, without limitation Plaintiff's Mark and Copyright Works, or any other marks or artwork that are confusingly or substantially similar to Plaintiff's Mark and Copyright Works on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products.

v. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiff.

vi. engaging in the unlawful, unfair, or fraudulent business acts or practices,

23

including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, selling and/or otherwise dealing in the Infringing Products;

x.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

xi.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (x) above; and

L.   For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's copyrights, trademarks or other exclusive rights including, without limitation Plaintiff's Mark and Copyright Works, or

bear any marks or artwork that are confusingly or substantially similar to Plaintiff's Mark and/or Copyright Works;

M.     For an order of the court requiring that Defendants deliver up for destruction to Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's copyrights, trademarks or other exclusive rights including, without limitation Plaintiff's Mark or Copyright Works, or bear any marks or artwork that are confusingly or substantially similar to Plaintiff's Mark and Copyright Works pursuant to 15 U.S.C. § 1118.

N.     For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, retailing, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest.

O.     For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

P.     For an award of exemplary or punitive damages in an amount to be determined by the Court;

Q.     For Plaintiff's reasonable attorney's fees;

R.     For all costs of suit; and

For such other and further relief as the Court may deem just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff respectfully demands a trial by jury on all claims.


Dated:  June 28, 2015                          Respectfully submitted,

                                               EPSTEIN DRANGEL LLP

                                               BY: /s/ Jason M. Drangel
                                               Jason M. Drangel (JMD 7204)
                                               jdrangel@ipcounselors.com
                                               Ashly E. Sands (AES 7715)
                                               asands@ipcounselors.com
                                               60 East 42nd Street, Suite 2410
                                               New York, NY 10165
                                               Telephone: (212) 292-5390
                                               Facsimile: (212) 292-5391
                                               *Attorneys for Plaintiff*
                                               *BIGMOUTH, INC.*